## UNITED STATES v. HEWECKER.

(Circuit Court, S. D. New York. December 9, 1896.)

WILLFUL MURDER—DEATH IN A FOREIGN COUNTRY—FUGITIVE FROM JUSTICE—INDICTMENT — THREE YEARS' LIMIT — SECTIONS 1043, 1045 AND 5339, REV. ST.—ON DEMURRER, PLEA TO INDICTMENT SUSTAINED.

A seaman on the American schooner M. was indicted for having shot in the harbor of Havana one Miller, who died therefrom in the hospital, three days afterwards, at Havana, on January 21, 1892. The indictment was not found until March 10, 1896; and H. in the meantime had been imprisoned at Havana upon conviction for an assault, and on the expiration of his sentence delivered to the United States authorities. On demurrer to the indictment: *Held* (1) that the defendant was not a fugitive from justice under section 1045 of the Revised Statutes, so as to be excepted from the exemption of indictment after three years, provided by section 1043; (2) that the death having taken place on land within a foreign jurisdiction, the case was not one of "willful murder" at common law, under the federal authorities; (3) that the only United States statute applicable, viz., section 5339, though making the offense punishable with death, neither declares it to be "murder" nor does it limit that offense to cases of death within a year and a day, which at common law was an essential element of the offense of murder; (4) *held*, therefore, that the case was not one of "willful murder" within section 1043, and the indictment was therefore barred by the three-years limitation.

Wallace Macfarlane, U. S. Atty., and Max J. Koehler, Asst. U. S. Atty.

Abram J. Rose and Alfred C. Petit, for defendant.

BROWN, District Judge. The defendant on March 10, 1896, was indicted by the grand jury of the circuit court in this district, for having maliciously shot and wounded one Edward J. Miller, on the

17th day of January, 1892, on board the American schooner Rebecca J. Moulton, in the harbor and bay of Havana, Cuba, "within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state," from which wound said Miller afterwards died in a hospital at Havana, on January 21, 1892. The indictment contains two counts, both averring the above facts, and that the Southern district of New York is the district in which said Hewecker "was found, and into which he was first brought for the offense aforesaid."

To this indictment a plea in abatement was interposed, which sets forth (1) that the indictment was not found until March 10, 1896, more than three years after the death of said Miller on land in Cuba on January 21, 1892; (2) that the charges in the indictment, if true, do not constitute the crime of "willful murder," and that under section 1043 of the Revised Statutes, the defendant cannot be prosecuted or tried; (3) that "from the 17th day of January, 1892, until the date of the finding of the said indictment, he had not fled from justice, but that he had been in the meantime and at all times between said dates confined in the prison at Havana, Cuba, under a charge and conviction for an assault inflicted in the city of Havana, and that the offense with which he is charged in the said indictment is barred by the statute of limitations." To this plea the government interposed a demurrer.

The argument upon the demurrer having been heard before one of the judges of the circuit court and the district judge, sitting together, upon their failure to agree, the question was certified, upon the request of the counsel of the United States, to the supreme court, which, on the 26th of October last, dismissed the certificate and declined to entertain jurisdiction thereon. Upon remand of the cause to the circuit court, the case has been reargued before me at the present criminal term, and elaborate briefs submitted by counsel upon the questions whether the case falls within the three-years limitation of section 1043, or within the exception thereto; and whether the prisoner can be treated as a fugitive from justice under section 1045, and on that ground not within section 1043.

Section 1043 of the Revised Statutes provides that:

"No person shall be prosecuted * * * for treason or other capital offence, willful murder excepted, unless the indictment is found within three years next after such treason or capital offence is done or committed."

Section 1045 provides:

"Nothing in the two preceding sections shall extend to any persons fleeing from justice."

1. I do not see how it is possible to find the prisoner "a fugitive from justice." The offense charged was not complete until Miller's death, on January 21, 1892. At that date, and prior thereto, viz., from the date the shot was fired, according to the facts admitted by the demurrer, the defendant was imprisoned in Havana under a charge and conviction for an assault, and so continued until long after the lapse of three years from the commission of the offense. Unless the offense be that of "willful murder," the statute limits the indictment to three years "next after * * * such capital offence is done or

committed"; i. e., next after the death, whereby the offense becomes complete. It contains no exception of cases arising on shipboard, or of death beyond seas. So far as I can see there is nothing resembling flight or voluntary withdrawal by the prisoner.

In a somewhat similar case before Judge Lowell (U. S. v. Brown, 2 Low. 267, Fed. Cas. No. 14,665), the prisoner had committed an assault on board of an American vessel, but remained on her until she returned to port, at which time the statutory period of limitation had expired. It was held that there was no flight from justice, and that the statute was a bar. In the recent cases cited (Streep v. U. S., 160 U. S. 128, 16 Sup. Ct. 244; Roberts v. Reilly, 116 U. S. 80, 97, 6 Sup. Ct. 291; In re White, 5 C. C. A. 29, 55 Fed. 54, 57), there was an actual voluntary withdrawal of the prisoner from the jurisdiction. Here there was none; and I find no authority for construing, nor is it rational to construe, as a flight from justice, a case in which there has been no withdrawal at all, but the accused has been a prisoner during the whole period.

2. The principal question remains, whether upon the facts admitted by the demurrer the case is one of "willful murder," so as to be within the exception to the three-years limitation under section 1043. If the matter were determined upon first impression only, and according to the popular meaning of the term "murder," it might be so considered; but more careful examination of the question has satisfied me that this would be erroneous. In some statutes that have been referred to, ancient and modern, the term "murder" is, perhaps, used in a general sense by way of recital or reference only, meaning, possibly, any malicious homicide. But the term "murder" in its strict and legal sense, and as importing a legal offense, has a more limited meaning. Apart from some special statute, it is said to be necessary, in order to constitute the offense of "murder," that the blow and the death happen under the same sovereignty, and that the death occur within a year and a day after the felonious act.

There can be no doubt that in section 1043, the term "willful murder" is used in its strictly legal sense, and not in a merely popular sense. The section is dealing only with offenses against the United States. What is excepted, therefore, is the offense of "willful murder," committed against the sovereignty of the United States, indictable as willful murder under some statute of the United States, and cognizable as murder by its courts.

As there is no statute of the United States defining what shall constitute the legal offense of murder, resort must be had to the common law, which it is said requires, among other elements, the two conditions above named.

In the recent case of Ball v. U. S., 140 U. S. 118, 133, 11 Sup. Ct. 761, Chief Justice Fuller observes:

"By the common law both time and place were required to be alleged; it was necessary that it should appear that the death transpired within a year and a day after the stroke, and the place of death equally with that of the stroke had to be stated to show jurisdiction in the court. The controlling element which distinguishes the guilt of the assailant from a common assault, was the death within a year and a day, and also within the same jurisdiction."

The disposition by Mr. Justice Bradley of the writ of habeas corpus in the case of U. S. v. Guiteau, 1 Mackey, 498, is referred to by the court in the case last cited with evident approval, in which the denial of a writ of habeas corpus was grounded on the provisions of the statute of 2 Geo. II. c. 21, which was in force in that part of the District of Columbia where the crime was committed, because that statute was adopted by Maryland before the cession of that district to the United States, and was continued after the cession by the express acts of congress. And in reference to the elaborate examination of the subject by the present Mr. Justice Gray in Com. v. Macloon, 101 Mass. 1, it is said that the conclusion reached was "that the inquiry was properly determined by the existence of statutory provisions"; and the decisions of Mr. Justice Washington and Judge Peters in U. S. v. McGill, 4 Dall. 426, 1 Wash. C. C. 463, Fed. Cas. No. 15,676, and of Mr. Justice Curtis in U. S. v. Armstrong, 2 Curt. 446, Fed. Cas. No. 14,467, are also referred to with apparent approval.

In U. S. v. McGill, the deceased died on shore at Cape Francois, from a blow inflicted by the mate of the American brig Rover, two days before, on board the brig while she lay there at anchor. The prisoner was indicted for having committed murder on the high seas, under the eighth section of the act of April 30, 1790 (1 Stat. 113), which corresponds with section 5372 of the Revised Statutes; and it was held that the indictment could not be sustained, because the death was on shore in a foreign jurisdiction. Peters, Justice, says:

"The court could only take cognizance of a murder committed on the high seas; and as murder consists in both the stroke and the consequent death, both parts of the crime must happen on the high seas to give jurisdiction."

Mr. Justice Washington says:

"We have no doubt that the death as well as the mortal stroke must happen on the high seas to constitute a murder there. * * * It would be inconsistent with common-law notions to call it [i. e. the existing case] 'murder;' but congress, exercising the constitutional power to define felonies on the high seas, may certainly provide that a mortal stroke on the high seas, wherever the death may happen, shall be adjudged to be a felony."

Similarly, Mr. Justice Curtis in U. S. v. Armstrong, 2 Curt. 451, Fed. Cas. No. 14,467, in reference to the crime of manslaughter under similar circumstances observes:

"Manslaughter is the unlawful killing of a human being without malice; and there is no such killing on the high seas, if the death takes place on land."

And with reference to the nature of the offense, Mr. Justice Curtis further says:

"It is true the offense described in the statute (Act 1825; 4 Stat. 115, § 4) is not strictly murder, for it punishes the malicious stroke given at sea, when the death occurs on land."

These decisions must be controlling here, unless some later statute is pointed out which makes the offense in this case strictly and properly murder. There is no such statute. The only statute invoked is section 5339 of the Revised Statutes, which provides as follows:

"Sec. 5339. Every person who commits murder—

"First. Within any fort, arsenal, dock-yard, magazine, or in any other place or district of country, under the exclusive jurisdiction of the United States;

"Second. Or upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin, or bay within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state;

"Third. Or who upon any such waters maliciously strikes, stabs, wounds, poisons, or shoots at any other person, of which striking, stabbing, wounding, poisoning, or shooting such other person dies, either on land or at sea, within or without the United States, shall suffer death."

The first clause of the above section is the same as section 3 of the act of 1790 (1 Stat. 113); the second and third sections are the same in substance as the fourth section of the act of 1825, above cited (4 Stat. 115); except that punishment for the crime of rape is transferred to another part of the Revised Statutes. On referring to the fourth section of the act of 1825, it becomes evident that no change in substance was intended by the revisers; and it makes clear also that the grammatical connection of the words "who commits murder" in the first line of section 5339 was intended to be precisely as it reads, viz., with the first two clauses only, and not with the third, except as to its last part, which prescribes the punishment. The fourth section of the act of 1825 reads as follows:

"Sec. 4. And be it further enacted, that, if any person or persons, upon the high seas, or in any arm of the sea, or in any river, haven, creek, basin, or bay, within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state (a) shall commit the crime of willful murder, or (b) rape, or (c) shall, willfully and maliciously, strike, stab, wound, poison, or shoot at, any other person, of which striking, stabbing, wounding, poisoning, or shooting such person shall afterwards die, upon land, within or without the United States, every person so offending, his or her counsellors, aiders, or abettors, shall be deemed guilty of felony, and shall, upon conviction thereof, suffer death."

This section manifestly creates three distinct offenses, (a) murder, (b) rape, (c) malicious wounding, etc., from which death ensues on land without the United States; and each of these offenses is declared to be, not murder, but a "felony." This statute would seem to have been drawn with the language of Mr. Justice Washington in view. It follows his language in providing that the last offense shall be adjudged a felony, though "it is inconsistent with common-law notions to call it murder." The statute of 1825, in providing first for "murder on the high seas," evidently did so in reference to the adjudication that to constitute murder there, the death as well as the stroke must be on the high seas. The third clause supplements the case of strict murder, by imposing capital punishment also in cases where the death occurs on land; but it does not declare the latter offense to be murder, but a "felony." The revisers probably omitted the designation "felony" as immaterial; but they also omitted to describe this offense as murder, although in the next section but one (section 5341), containing a precisely parallel provision in respect to manslaughter, where the death occurred without the United States, the offense is declared to be manslaughter in the revision, as it is in the original act of 1857 (11 Stat. 250).

It is suggested that the marginal note "murder" placed against section 5339 should be construed as indicating that all the provisions of this section were intended to be treated as murder. But as the first two clauses of that section provide for cases of murder strictly, the marginal reference was appropriate, and there is no warrant for carrying its effect beyond what the body of the statute describes as murder.

In the third paragraph of section 5339, the words "who upon any such waters" have no grammatical connection with the words "commits murder" in the first line. They connect only with the words "every person"; and the effect is the same as if the third clause had read, "every person who upon any such waters maliciously strikes," etc.; and this is made perfectly clear by a reference to the fourth section of the act of 1825, as above quoted.

Now, it was in reference to this very statute, transferred without any substantial change to the Revised Statutes, that Mr. Justice Curtis, in the case of U. S. v. Armstrong, supra, said: "It is not strictly murder, for it punishes the malicious stroke given at sea, when the death occurs on land."

I ought to hesitate long, and especially in a capital case, before departing from the judgment of so eminent a jurist as Mr. Justice Curtis, and the more so when the case in which the above passage occurs has received so recent an approval of the supreme court. And if the case is "not strictly murder," then I have clearly no right to treat it as within the exception of section 1043.

There is an additional circumstance also in the third clause of section 5339, which prevents that offense from being deemed murder; viz., that it is not a condition of the offense there described, that the death should occur within a year and a day; while that limitation, as we have seen, is an essential condition of the offense of murder. Congress not having inserted any such time limitation, the court has no authority to insert it by construction, because that would materially limit the scope of the act, and correspondingly raise the offense. The offense, therefore, is a statutory offense, broader than murder, as manslaughter is broader than murder; since neither require certain conditions that are essential to constitute the offense of murder.

Nor can I extend the scope of section 5339 by implication upon the ground that morally the offense is just as heinous as when the death occurs on the high seas or within the jurisdiction where the blow was given; nor on the theory that the mischief intended to be avoided by the exception, is the same in both cases. I must be governed by the statute itself. It was in reference to precisely such a contention that Chief Justice Marshall, in the case of U. S. v. Wiltberger, 5 Wheat. 76, says:

"The case must be a strong one indeed to justify the court in departing from the plain meaning of the words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine whether the case is within the intention of the statute itself, the language must authorize it to say so. It would be dangerous indeed to carry the principle that a case which is within the reason and mischief of a statute, is within the provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated."

I find, therefore, that upon the facts admitted by the demurrer, the offense in this case does not constitute willful murder, because (1) apart from statute, such an offense has never been so treated by the courts of the United States when the death was in a foreign country; (2) the only statute (originally that of 1825) under which the case can be brought, makes the case not murder, but a felony, following the ruling of Mr. Justice Washington that it could not be called "murder," but might be adjudged a felony; (3) because the revisers evidently intended to continue this distinction, and deliberately avoided calling the offense "murder," by carefully adopting a phraseology and a grammatical construction which necessarily exclude it from the designation of murder in the first line of section 5329; and (4) because the third clause of section 4 of the act of 1825, and the third clause of section 5339 of the Revised Statutes, cannot constitute murder, except by narrowing their scope through the insertion of a proviso that the death occur within a year and a day,—a limitation upon the act which I have no right to impose.

The demurrer is, therefore, overruled, and the plea in abatement sustained.