## BROUSE v. UNITED STATES.
### No. 2850.

Circuit Court of Appeals, First Circuit.
Dec. 15, 1933.

Daniel A. Shea, of Boston, Mass. (Isadore P. Eisenberg, of Brooklyn, N. Y., on the brief), for appellant.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

MORTON, Circuit Judge.

The defendant was convicted of using the mails in a scheme to defraud. The important questions on the present appeal relate to the statute of limitations. There were four counts in the indictment, based on as many different letters. The letters were alleged to have been mailed on January 23, 1929, August 2, 1929, October 8, 1929, and October 10, 1929. All of them were sent to the complaining witness in Boston from points outside the state and district of Massachusetts. It will be noticed that the latest date on which a crime is, by the indictment, charged to have been committed, was October 10, 1929.

The defendant filed a special plea in bar alleging that the indictment, which was returned on February 15, 1933, was not found within three years after the alleged crimes or offenses therein charged; in other words, that the prosecution was outlawed. The United States replied to this plea that the indictment was not barred because "the defendant was a person fleeing from the justice of this Honorable Court during the period between the commission of the offenses charged and the date of the filing of the indictment." On the issue thus raised, a jury trial was waived, and, by agreement of the parties, approved by Judge Hale, the issues of fact and law involved in the plea were tried by him. Patton v. United States, 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263.

At this trial the parties stipulated that the defendant was not "actually or physically" within the district of Massachusetts when either of the letters in question was mailed, in other words that all of them were mailed, as appears on their faces, from outside Massachusetts. The defendant's place of resi-

dence is not alleged in the indictment, which in the first count charges that he was "commorant at Boston" and resided at times early in 1929 at the Hotel Vendome in Boston, and during later months of that year in the state of Maine. The other counts allege that he was commorant in Boston on the dates of the alleged offenses. Judge Hale overruled the plea in bar, without opinion. He refused certain rulings requested by the defendant of which the following are typical:

(1) "In order to find that the accused fled from the justice of said district he must have been actually and physically within said district when at least one of the letters was caused to be delivered to the addressee Clark at Boston as therein alleged, and inasmuch as he was not so present he cannot be said to have fled from the district."

(2) "The accused as a matter of law cannot be said to be a person fleeing from justice under said indictment when it appears as it does that at most he was merely constructively present in said district when said letters were caused to be delivered as alleged in said indictment."

(4) "On all the law and evidence the court must find that the accused was not a person fleeing from the justice of said district."

The defendant was then put upon trial on the indictment before Judge McLellan and a jury, and was convicted of the offense charged. The principal points urged for the defendant are (1) that the plea in bar should have been sustained; (2) that the court was without jurisdiction to try the defendant upon the general issue; and (3) that a verdict of not guilty should have been directed as to the first count.

■ The real question is whether the prosecution was outlawed. While the government is not bound to prove the exact date charged in the indictment, that date will be accepted on questions of limitation, unless evidence is introduced to vary it. Greene v. United States (C. C. A.) 154 F. 401, 411. No such evidence was introduced; and as February 15, 1933 was more than three years after the date of the last offense charged in the indictment, the prosecution is barred, unless the statute was tolled by reason of the fact that within three years after the commission of the alleged crime the defendant was a "person fleeing from justice." 18 USCA §§ 582, 583.

■■ The defendant's position as stated in his requests for rulings above quoted was, and is, that a person cannot be a fugitive from justice in a district in which he was not present at the time when the crime charged was committed, and that constructive presence within a district or state, which may be sufficient to warrant conviction if the defendant be found there, is not sufficient to make him a fugitive from its justice. That this is so under the extradition statutes seems clear. Hyatt v. New York ex rel. Corkran, 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657; South Carolina v. Bailey (May 22, 1933) 289 U. S. 412, 53 S. Ct. 667, 671, 77 L. Ed. 1292.

The doubtful point is whether the same principle is applicable between federal districts. The states are independent jurisdictions whose powers do not extend beyond their own borders. Under the Constitution and laws of the United States, they have the right to demand from each other the surrender of fugitives from justice. The situation is very different as to the United States. Its powers extend throughout its territory. Its districts are merely administrative divisions. They stand historically and practically on a very different footing from the states. A person who violates the federal law may be arrested wherever found and removed for trial to the district where the crime was committed. This right of removal is as broad as the right to prosecute. In Salinger v. Loisel, 265 U. S. 224, 44 S. Ct. 519, 68 L. Ed. 989, the defendant was indicted in the district of North Dakota for using the mails in a scheme to defraud by causing a letter mailed by him in Iowa to be delivered to the addressee in North Dakota. It was held that the delivery of the letter in North Dakota made him punishable there under the same statute as that on which the present indictment is founded, and that he was subject to removal to North Dakota for trial. Where, on similar facts, the prosecution was under state law for obtaining money by false pretenses made through the mails, extradition was denied. Tennessee v. Jackson (D. C.) 36 F. 258, 1 L. R. A. 370.

■■ The essential characteristic of fleeing from justice is leaving one's residence, or usual place of abode or resort, or concealing one's self, with the intent to avoid punishment. United States v. O'Brian, Fed. Cas. No. 15,908; Streep v. United States, 160 U. S. 128, 16 S. Ct. 244, 40 L. Ed. 365; Greene v. United States, 154 F. 401 (C. C. A. 5th), certiorari denied 207 U. S. 596, 28 S. Ct. 261, 52 L. Ed. 357; Ferebee v. United States, 295 F. 850 (C. C. A. 4th). It has been held that one may flee from justice without leaving the judicial district in which the offense was committed, if he left his usual places of abode and resort and concealed

himself; but a seaman who shot another on an American vessel in Havana Harbor and was imprisoned by the Cuban authorities for the assault, and on the expiration of his sentence was delivered to the United States authorities, was held not to be a fugitive from justice during his imprisonment, and therefore was entitled to the benefit of the statute of limitations during that interval. United States v. Hewecker (C. C.) 79 F. 59, 60, certificate dismissed 164 U. S. 46, 17 S. Ct. 18, 41 L. Ed. 345. See, too, United States v. Brown, 2 Lowell, 267, Fed. Cas. No. 14,665, in which the same principle was applied in the case of an officer of a whaling vessel, who assaulted a seaman on the high seas and thereafter remained on the vessel for the completion of the voyage, a period of more than three years.

Whether a person is during any given period a fugitive from justice in the federal courts is, as these decisions make clear, a question of fact to be determined from his acts and intent. There is nothing artificial about it, as there is in extradition cases, no necessity that the defendant should have been actually present in the district where he is wanted for trial and have run from there. The fleeing which tolls the statute is flight from the justice of the United States, not the justice of any particular district. For these reasons we are of opinion that the first two of the above requests for rulings were correctly refused.

■■ The fourth request presented the question whether there was any evidence that the defendant was a fugitive. On the face of the papers the statute of limitations appeared to have run. As the government alleged that the statute had been tolled by the fact that the defendant was fleeing from justice, the burden was on the government to establish that fact. There was evidence showing the following facts: The defendant and the complaining witness, Clark, became acquainted at the Hotel Vendome, Boston, in the spring of 1928; and the two met very frequently thereafter in Boston or in New York until the completion of the crime. Shortly after having obtained from Clark by false pretenses $63,000 in October, 1929, the defendant left this part of the country; and he appears not to have returned until under arrest, nor to have communicated with persons here. He told Clark that he (the defendant) would be at the Hotel Vendome on December 15, 1929, that he had rooms reserved there for that date, but he did not come. Letters sent to him by Clark at a New Orleans address were not answered. It further appeared that fol-

lowing the completion of the crime, the defendant spent three winters at Hot Springs, Ark., during at least one of which he was accompanied by his wife and children. They lived in an apartment. He spent the intervening summers at Estes Park, Colo. These places were remote from the scene of the crime. He was arrested in January, 1933, at San Antonio, Tex. There was a striking change in defendant's habits as to his customary places of resort, beginning almost immediately after the completion of the crime. It stands wholly unexplained. We cannot say that Judge Hale's finding that it was prompted by a purpose to evade arrest and prosecution was unwarranted or unreasonable. His decision on the plea in abatement must stand.

■ The defendant also urges that the letter of January 23, 1929, which he wrote to the complaining witness, Clark, was so remote in time and subject-matter from the consummation of the crime in the following October, that it ought not to have been admitted on his trial before the jury, and that a verdict of not guilty ought to have been directed on the first count. This letter was very carefully and fully dealt with by Judge McLellan in his charge. He left it to the jury to say whether the letter was merely a friendly note, or was an approaching move on the defendant's part in a scheme, which he formulated, to swindle Clark. The letter is to be read, not as something standing alone, but in connection with many facts and circumstances in the relations between Clark and the defendant. In leaving the matter to the jury, we think the trial judge was right.

The judgment of the District Court is affirmed.

LETTS, District Judge (dissenting).

Being unable to concur in full with the decision of the court, I shall briefly state the grounds of my dissent. These relate only to that part of the opinion and decision dealing with the sufficiency of the plea in bar as raised by the defendant's request No. 4 for rulings by Judge Hale. The court here agrees that the burden is upon the government to establish the fact that the defendant was "fleeing from justice" during the interim, or a sufficient part thereof, between October 10, 1929, and February 15, 1933, so as to toll the running of the statute of limitations.

The indictment does not allege, nor is there evidence of, any fixed or usual place of abode. The record suggests that the defendant was an itinerant, both before and after the commission of the offense. It does not,

however, disclose that this practice was any different after October 10, 1929, than prior thereto. During the whole three-year period in question there was outstanding no warrant of arrest, no pending indictment, no notice of complaint or intended prosecution. So far as the record discloses, the defendant was fleeing from nothing and not even absent from a usual place of abode, as none was alleged or established. There is no evidence that during the time the defendant was at New Orleans, Hot Springs, Estes Park, Colo., the Hotel Palmer, Chicago, or other places, he concealed his identity or cloaked his movements with any secrecy.

Judge Hale in overruling the plea in abatement does not disclose the grounds or findings upon which that action was predicated. Granting, however, that his action of necessity involved a finding of fact that the defendant moved about for the purpose and with the intent of avoiding arrest, still, unless there be some evidence upon which to base such a finding, it remains for this court an unmixed question of law.

The cases cited in the majority opinion do not, as I view them, support the conclusion reached in this case. In the case of United States v. O'Brian, Fed. Cas. No. 15,908, the jury found for the defendant on the ground that the offense was barred.

In Streep v. United States, 160 U. S. 128, 16 S. Ct. 244, 40 L. Ed. 365, there was ample evidence of a fleeing from justice of the state of New York. The only issue involved was whether a fleeing from justice by a defendant in order to toll the statute of limitations must be a fleeing from the justice of the United States. The court held that it is not necessary that there be an intent to avoid the justice of the United States if there is established an intent to avoid the justice of the state having criminal jurisdiction over the same territory and the same act.

In the case of Greene v. United States (C. C. A.) 154 F. 401, it appears that instructions had been issued to the deputy marshals of the district wherein the defendants resided, and that the defendants could not there be found, that they were found in the Southern district of New York, that they there resisted proceedings to remove them to Georgia for trial, and later fled to Canada. The indictment itself charged that the defendants were persons fleeing from justice, and, supported by the aforementioned evidence, the question of fact was submitted to the jury and found adversely to the defendants.

In the case of Ferebee v. United States

(C. C. A.) 295 F. 850, the court had before it the question only as to whether one may within the meaning of the statute flee from justice without leaving the district wherein he resided. The defendant's usual place of abode was clearly established, and there was evidence of the defendant's departure therefrom and purposeful concealment.

The case of United States v. Hewecker (C. C.) 79 F. 59, so far as it deals with the question of what constitutes a fleeing from justice, sustained the plea in abatement holding that the statute of limitations was not tolled during the period that the defendant, although outside the country, was there being held imprisoned under a charge and conviction for a crime there committed.

It seems to me that the effect of the majority opinion, in view of the state of the record, is virtually to set aside the statute of limitations here applicable. Granting in this case that the defendant is deserving of punishment, the remedy to avoid miscarriage of justice in such cases is for complaining witnesses and prosecuting officials not to delay action on their part until after the statutory period has run.

The judgment of the District Court in overruling the plea in abatement should be reversed.