B. M. DONNELL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15446.

United States Court of Appeals Fifth Circuit.

Jan. 27, 1956.

which he was charged was committed is material and is a question of fact which should be submitted to the jury for its determination or is a question of law under the facts of this case, to be decided by the Court. Appellant, B. M. Donnell, was convicted on an indictment charging him with violation of 18 U.S.C.A. § 1001 by the making of false representations in a matter within the jurisdiction of the Veterans Administration.

The indictment charged that appellant committed the acts in question in July, August and September of 1948, more than three years before it was returned in October, 1951. During that period appellant had engaged in a number of activities including the construction business, import-export, recruiting for a voluntary group to fly in the Korean War, and operating a wholesale lumber business; and appellant was, on several occasions, outside the judicial district of the alleged crime, having spent more than a year of this time in Honduras.

Appellant moved to dismiss the indictment on the ground that it was not returned within three years after the offense charged had been committed, and that the Statute of Limitations[1] barred the prosecution. The motion was denied, the Court below holding "that as a matter of law the statute of limitations was tolled as to the defendant herein by virtue of his being without the jurisdiction of this court, and that the intent of the defendant in so leaving and remaining without the jurisdiction is immaterial * * *".[2]

James L. Drought, San Antonio, Tex., for appellant.

Harman Parrott, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before HOLMES, RIVES and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The one narrow question involved in this appeal is whether appellant's intention in absenting himself from the jurisdiction of the court where the crime with

1. 18 U.S.C.A. § 3282:
    "Offenses not capital
    "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within three years next after such offense shall have been committed. June 25, 1948, c. 645, 62 Stat. 828."

2. The Government takes the position that the running of the statute of limitations was tolled under 18 U.S.C.A. § 3290 providing: "No statute of limitations shall extend to any person fleeing from justice."

    The Government, in its brief, states the following:
    "Prior to submitting the case to the jury on January 10, 1955, the Court advised counsel for the appellant that the question raised by appellant's motion to dismiss would not be submitted to the jury, since the undisputed evidence, including the testimony of the appellant, showed that the appellant was without the jurisdiction of the Court and ruled that the appellant's intent in leaving the jurisdiction was immaterial."

There is a line of cases supporting this position taken by the Government and justifying the ruling of the Court below,[3] but we do not think this line of cases announces the correct rule or the rule established by the Supreme Court and followed by this Court; nor do we think that the language of the statute itself supports this position.

■ The prime rule of statutory construction is that its words should be given the meaning they would evoke in the common mind. "For the ultimate question is what has Congress commanded, when it has given no clue to its intentions except familiar English words and no hint by the draftsmen of the words that they meant to use them in any but an ordinary sense. * * * After all, the legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him."[4]

■ In Webster's New World Dictionary of the American Language, College Edition, the first meaning given to the intransitive verb "flee" is, "1. To run away or escape from danger, pursuit, unpleasantness, etc." The statute above quoted carries the connotation that only those persons shall be denied the benefit of the Statute of Limitations who have absented themselves from the jurisdiction of the crime with the intent of escaping prosecution. The Supreme Court has made but one declaration on the subject,—Streep v. United States,

1895, 160 U.S. 128, 16 S.Ct. 244, 246, 40 L.Ed. 365. A slightly different facet of the subject of the tolling of the Statute of Limitations was there dealt with but its pronouncement was clear and unequivocal in its adherence to the dictionary definition above quoted.

In the Streep case the indictment was found more than three years after the crime charged had been committed. Shortly after its commission Streep had been indicted also in a state court where his bail was later forfeited because of his failure to appear. There was testimony at the trial tending to show that Streep went to Europe to avoid the forthcoming prosecution in the state court. The jury was charged that if they believed this evidence, then the defendant was a "fugitive from justice" within the meaning of the statute under consideration. The trial court declined to direct an acquittal or to give an instruction to the effect that, in order to be a fugitive from justice, the defendant must have been fleeing the justice of the United States and not that of the state court.

In affirming, the Supreme Court held that it was unnecessary that a person have in mind avoiding the justice of any particular court in order to be a fugitive within the meaning of the statute. Nevertheless, it was clearly recognized that the general intention of the defendant in leaving the jurisdiction is material and is an indispensable aspect in considering whether he was, while outside the jurisdiction, a fugitive from justice. The following disconnected quotations gathered from the opinion 160 U.S. at pages 133–

At another point in the Government's brief its position is thus stated:

"Departure from one's usual place of abode and concealment within the district or elsewhere for the purpose of avoiding punishment constitute 'fleeing from justice.' And mere absence from the district without more is sufficient. The period of concealment or absence from the district is the period during which the statute is tolled." [Citing cases.]

3. E. g. King v. United States, 8 Cir., 1944, 144 F.2d 729, certiorari denied

324 U.S. 854, 65 S.Ct. 711, 89 L.Ed. 1413, and McGowen v. United States, 1939, 70 App.D.C. 268, 105 F.2d 791, 124 A.L.R. 1047, certiorari denied 308 U.S. 552, 60 S.Ct. 98, 84 L.Ed. 464.

4. From Addison v. Holly Hill Fruit Products, Inc., 1944, 322 U.S. 607, 617, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488; and see also McBoyle v. United States, 1931, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816, and Crane v. Commissioner, 1946, 331 U.S. 1, 6, 67 S.Ct. 1047, 91 L.Ed. 1301.

135, 16 S.Ct. at page 246, demonstrate the correctness of this statement:

"* * * it is quite clear that any person who takes himself out of the jurisdiction, with the intention of avoiding being brought to justice for a particular offense, can have no benefit of the limitation, at least when prosecuted for that offense in a court of the United States.

"* * * It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun. * * *

"From these considerations, our conclusion is that in order to constitute 'fleeing from justice' within the meaning of section 1045 of the Revised Statutes [now 18 U.S.C.A. 3290], it is not necessary that there should be an intent to avoid the justice of the United States, but it is sufficient that there is an intent to avoid the justice of the state having criminal jurisdiction over the same territory and the same act."

This Court has had before it two cases dealing with the subject,[5] and, in each instance, we accepted as the law the quoted language of the Streep case. In Porter's case he made the effort to induce the trial court to charge as a matter of law that the prosecution was barred by limitations when admittedly he had spent quite a period outside the jurisdiction of the court. We affirmed the trial court's action in rejecting that contention, stating, 91 F. at page 497: "The counsel for the defendant did not proceed upon the view that the question of flight was one for the jury * * *. An entirely different case would be presented if the plaintiff in error had requested the trial judge to submit the question of flight to the jury * * *."

After quoting from the Streep case some of the language set forth above to the effect that " 'it is quite clear that any person who takes himself out of the ju-risdiction, *with the intention of avoiding being brought to justice for a particular offense, can* have no benefit of the limitation' ", [emphasis added] we stated: "The counsel for the plaintiff in error seem to have proceeded upon the false theory that, to constitute fleeing from justice, under section 1045, id., a person must not only have left the jurisdiction of the court for the purpose of avoiding a prosecution, but that he must besides be found within the territory of another court."

The Greene case [154 F. 411] presented quite involved facts and the decision and dissent take up twenty-three pages in the Federal Reporter, and no good purpose will be served by making an extended examination of the facts. It is sufficient to say that we held that the question of intent which lay behind the flight was a proper one to submit to the jury, calling upon the Streep opinion for our authority:

"If they committed a crime in the Southern District of Georgia, and, when sought to be tried by the court having jurisdiction, they had left the district and are found in another state and district, and not in the district of their homes, *under circumstances indicating a purpose to evade the authority and jurisdiction of the local courts,* they might be justly considered fugitives from justice. Streep v. United States, 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365. * * * But it is sufficient for the purposes of our decision to show that there was evidence proper to be submitted to the jury and sufficient to sustain a verdict that the defendants became fugitives from justice * * *. This court, in the exercise of its appellate jurisdiction, cannot review and reverse the verdict of a jury upon the facts of the case." [Emphasis added.]

Brouse v. United States, 1933, 68 F.2d 294, is a well reasoned case wherein the

---

5. Porter v. United States, 5 Cir., 1898, 91 F. 494, and Greene v. United States, 5 Cir., 1907, 154 F. 401, certiorari denied 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357.

First Circuit cited our Greene case and the Streep case as authority for this same construction of the statute. The question of absence from the jurisdiction was submitted to the trial court, which found the question of intent in favor of the Government and the Court of Appeals affirmed, using in part this language: "The essential characteristic of fleeing from justice is leaving one's residence, or usual place of abode or resort, or concealing one's self, with the intent to avoid punishment. * * * [At page 295].

"Whether a person is during any given period a fugitive from justice in the federal courts is, as these decisions make clear, a question of fact to be determined from his acts and intent. * * *

" * * * On the face of the papers the statute of limitations appeared to have run. As the government alleged that the statute had been tolled by the fact that the defendant was fleeing from justice, the burden was on the government to establish that fact. * * *" [At page 296].

Thereupon the Court of Appeals set out in some detail the facts concerning Brouse's intent in absenting himself from the jurisdiction, all of which pointed to the fact that his absence was dedicated to the purpose of avoiding prosecution. The Court concludes discussion of the subject with this statement: "There was a striking change in defendant's habits as to his customary places of resort, beginning almost immediately after the completion of the crime. It stands wholly unexplained. We cannot say that Judge Hale's finding that it was prompted by a purpose to evade arrest and prosecution was unwarranted or unreasonable. His decision on the plea in abatement must stand." [At page 296].

This construction of the statute is, in our opinion, reasonable and sound. The opposite conclusion reached by other courts is based, we apprehend, to some extent upon their effort to invest the words of Section 3290 (Note 1, supra) with the same meaning as that given by the courts to similar language in the extradition statute.[6] But the purposes the two statutes were designed to serve are entirely different. When one state indicts a person then physically within another state, it is entitled to extradite him immediately for trial, and it is of no importance that the "fugitive" had been absent from the state of the indictment only one day for that state is entitled to his return regardless of what took him away.

But it would do violence to the reason and purpose of Section 3290 to hold that a person was "fleeing from justice" so as to suspend the running of the statute of limitations if he legitimately left the district of the supposed crime or moved his home openly to another district, being all the while easily accessible to any officer who might have a warrant to serve. And the Supreme Court cases cited and relied upon by the Government recognize the difference.[7]

6. One of the sections of Chapter 209, 18 U.S.C.A. titled "Extradition", implementing Article IV, Paragraph 2, Clause 2 of the Constitution, provides in part:

"§ 3182. Whenever the executive authority of any State or Territory demands any person as a *fugitive from justice*, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found * * * charging the person demanded with having committed treason, felony, or other crime, * * * the executive authority of the States * * * to which such person has fled shall cause him to be arrested and secured * * * and shall cause the fugitive to be delivered to such agent when he shall appear." [Emphasis added.]

7. For example, a reading of the case of Appleyard v. Massachusetts, 1906, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, will demonstrate this difference clearly. New York applied to Massachusetts for extradition of Appleyard and, upon its being granted, habeas corpus was sought. The Massachusetts court discharged the writ and the Supreme Court affirmed, using in part this language:

"The constitutional provision relating to fugitives from justice, as the history of its adoption will show, is in the nature of a treaty stipulation entered into for

It is clear, therefore, that under extradition statutes the fact of absence at the time of the arrest is sought establishes the right of removal to the district of the crime regardless of the motive or intent behind the absence.[8] But it is equally clear that, in determining whether a person charged with crime will be denied the right to be protected by the statute of limitations, the purpose and intent of his absence is an important matter to be inquired into by the jury under the plain words of the statute and the decisions discussed.

The Court below having held that appellant's absence standing alone took from him the right to have the jury consider the circumstances and intent attending his absence, its judgment is reversed and the cause is remanded for further proceedings in conformity with this opinion.

Reversed and remanded.

RIVES, Circuit Judge.

I respectfully dissent because it seems to me that the phrase, "fleeing from justice", as used in the statute[1] has acquired a well defined historical meaning contrary to the opinion of the majority. For the history of that phrase, we have but to read the opinion of the Supreme Court in Streep v. United States, 160

U.S. 128, 134, 135, 16 S.Ct. 244, 247, 40 L.Ed. 365:

"Section 1045 of the Revised Statutes is a re-enactment of the corresponding proviso in the first crimes act of the United States, 'Provided, that nothing herein contained shall extend to any person or persons fleeing from justice.' Act April 30, 1790, c. 9, § 32 (1 Stat. 119).

"At the time of the passage of that act, the only use, in the constitution or statutes of the United States, of the words 'flee from justice,' was in article 4, § 2, of the Constitution, concerning persons charged with crime in one state and found in another state of the Union."

My brothers think that the Supreme Court in Streep v. United States, supra, and in Appleyard v. Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, recognized a difference in construction between the present statute and the extradition statute. To me it is inconceivable how the Supreme Court could have expressed its opinion more clearly that the two statutes should receive the same construction. In Streep v. United States, supra, 160 U.S. at page 134, 16 S.Ct. at page 246, the Court said:

the purpose of securing a prompt and efficient administration of the criminal laws of the several states * * *. [At page 227 of 203 U.S., at page 124 of 27 S.Ct.]

" 'To be a fugitive from justice, in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a state committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction and is found within the territory of another.' * * * [at page 229 of 203 U.S., at page 124 of 27 S.Ct.]

"In Hibler v. State, 43 Tex. 197, 201, the Court said: 'The words "fugitive

from justice" as used in this connection, *must not be understood in a literal sense*, but in reference to the subject matter, considering the general object of the Constitution and laws of the United States in relation thereto. A person who commits a crime in one state, for which he is indicted, and departs therefrom, and is found in another state, may well be regarded as a fugitive from justice in the sense in which it is here used.' " [Emphasis added] [at page 232 of 203 U.S., at page 125 of 27 S.Ct.] And cf. Rule 40, Federal Rules of Criminal Procedure, 18 U.S.C.A.

8. Cf. 35 C.J.S., Extradition, § 10, p. 326; Roberts v. Reilly, 116 U.S. 80, 97, 6 S.Ct. 291, 29 L.Ed. 544.

1. *"Fugitives from justice*
"No statute of limitations shall extend to any person fleeing from justice." 18 U.S.C.A. § 3290.

**566**

."And there can be no doubt that, in this respect, section 1045 of the Revised Statutes must receive the same construction that has been given to section 5278 by this court, saying: 'To be a fugitive from justice, in the sense of the act of congress regulating the subject under consideration, it is not necessary that the party charged should have left the State in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having, within a state, committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process, to answer for his offenses, he has left its jurisdiction, and is found within the territory of another.' Roberts v. Reilly, 116 U.S. 80, 97, 6 S.Ct. 291 [29 L.Ed. 544]."

In Appleyard v. Massachusetts, supra, 203 U.S. at pages 229, 230, 27 S.Ct. at page 124, the Court said:

"It is suggested that Roberts v. Reilly was substantially modified in Streep v. United States, 160 U.S. 128, 134, 16 S.Ct. 244, 40 L.Ed. 365, 369, in which the court had occasion to construe § 1045 of the Revised Statutes. But this is an error. Interpreting the words 'fleeing from justice' as found in that section, the court expressly held that these words must receive the same construction as was given in Roberts v. Reilly to like words in § 5278 of the Revised Statutes, the inquiry in that case being whether the accused was a fugitive from justice." [2]

True, the factual situation in Streep v. United States, supra, did not require the definite holding with which we are confronted in the instant case, and the Court itself commented that, "It is unnecessary, for the purposes of the pres-ent case, to undertake to give an exhaustive definition of these words, * * *." 160 U.S. at page 133, 16 S.Ct. at page 246. Nor was this Court required to meet the issue here presented in Porter v. United States, 5 Cir., 91 F. 494, nor in Greene v. United States, 5 Cir., 154 F. 401.

True, also, there are factual situations sometimes presented under the present statute which differ from the simple facts hypothesized in Roberts v. Reilly, 116 U.S. 80, 97, 6 S.Ct. 291, 29 L.Ed. 544, that is having been within the jurisdiction at the time of the commission of the crime and thereafter having left the jurisdiction. The analogy of the extradition statute would not apply unless the person was physically present in the judicial district at the time the crime was alleged to have been committed, and where he was not so present intention may become material under the present statute. Brouse v. United States, 1 Cir., 68 F.2d 294, was such a case. Nor would the analogy of the extradition statute apply when the person never went out of the district, but simply hid himself within it, and, again in that situation, intention may become material under the present statute. Ferebee v. United States, 4 Cir., 295 F. 850, was such a case. While there is conflicting language in the opinions in the Brouse and Ferebee cases, neither of those decisions is in conflict with the holding in McGowen v. United States, 70 D.C. 268, 105 F.2d 791, 792, 124 A.L.R. 1047, that, "Accordingly appellant, when he left the District after committing forgery, was a 'person fleeing from justice,' regardless of his motive in leaving."

The Constitution was not finally ratified and declared effective until September 13, 1788. Within less than two years thereafter, the first Congress used in the predecessor to the present statute the same expression employed in Article 4, § 2, Clause 2, of the Constitution, "flee from Justice." It seems to me that, in

2. It may be noted that Justice Harlan who wrote the opinion in the Appleyard case, and three of the justices who concurred in that opinion had concurred in the opinion in the Streep case.

its wisdom, that first Congress thought that in cases where a defendant relies on the statute of limitations, there was a need for as definite a statute as possible, not unnecessarily requiring a full dress trial on limitations before getting down to the real issue on the merits of guilt or innocence, at least similar to the necessity for such a Constitutional provision in extradition cases.

The appellant argues that some statute of limitations should apply to a person who was present in the district when the crime was allegedly committed, and later with bona fide and honorable intentions permanently left that district. At common law there is no limitation as to the time within which offenses may be prosecuted. 15 Am.Jur., Criminal Laws, § 342, p. 31; 22 C.J.S., Criminal Law, § 223, note 85, p. 350; United States v. Fraidin, D.C.Md., 63 F.Supp. 271, 279; United States v. Thompson, 98 U.S. 486, 489, 25 L.Ed. 194. It would seem that the constitutional (Sixth Amendment) right to a speedy trial does not arise until after a formal complaint has been brought against a defendant. Iva Ikuko Toguri D'Aquino v. United States, 9 Cir., 192 F.2d 338, 350; 14 Am.Jur., Criminal Law, § 134; 22 C.J.S., Criminal Law, §§ 466, 467. I do not think that the courts should assume the duty of protecting persons who have left the district in good faith, but should leave that matter to the action of Congress, if and when it may be impressed, by experience under the present statutes or otherwise, with the desirability for such protection.

The precise question here presented has been decided by the District of Columbia Circuit in McGowen v. United States, supra; see also, Green v. United States, 88 U.S.App.D.C. 249, 188 F.2d 48; by the Eighth Circuit in King v. United States, 144 F.2d 729, and in principle by the Fourth Circuit in Bruce v. Bryan, 136 F. 1022, approving the opinion of District Judge Morris in In re Bruce, C.C.Md., 132 F. 390, in each instance contrary to the opinion of the majority in this case. Those decisions seem to me to be sound, both by precedent and by reason. They accord with the history of the phrase, with the language of the Supreme Court in Streep v. United States, supra, and Appleyard v. Massachusetts, supra, and they announce a simple, practical, and workable principle of procedural law in the administration of justice in criminal cases.

Further, the facts of the instant case remove it entirely from the rationale, or certainly from one of the *main* reasons, for the decision in Brouse v. United States, supra, as there expressed:

"The doubtful point is whether the same principle is applicable between federal districts. The states are independent jurisdictions whose powers do not extend beyond their own borders. Under the Constitution and laws of the United States, they have the right to demand from each other the surrender of fugitives from justice. The situation is very different as to the United States. Its powers extend throughout its territory." 68 F.2d at page 295.

The indictment in the present case was returned on October 1, 1951; if it had been returned on or before July 20, 1951, it would have been within the statutory three year period as to all crimes charged; so that it is necessary to toll the statute of limitations for a total of only seventy-two days. The defendant himself testified to various absences entirely beyond the boundaries of the United States, for example:

"Q. Now, getting back down to —what's the name of that town in Honduras? A. Tegucigalpa.

"Q. That was the capital of Honduras. How long did you remain there? A. As I said, until November 24th. I left Honduras—1950.

"Q. You got your passport there; does your passport indicate when you arrived? A. Yes, sir. I arrived on July 21st, 1950.

"Q. And then in November you left Honduras; where did you go?

A. I came back to the United States.

"Q. How long were you here? A. I was here a week and I returned on November 29th.

"Q. To Honduras? A. To Honduras, yes."

During that period alone, defendant was in Honduras for more than one hundred fifty-six days. Clearly, under such facts, the district court was correct in holding: " * * * as a matter of law the statute of limitations was tolled as to the defendant herein by virtue of his being without the jurisdiction of this court and that the intent of the defendant in so leaving and remaining without the jurisdiction is immaterial, * * *."

I therefore respectfully dissent.