UNITED STATES of America,
Plaintiff-Appellant,

v.

Stephen GONSALVES,
Defendant-Appellee.

No. 81–1214.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1981.

Decided April 28, 1982.
Rehearing Denied June 3, 1982.

John J. Robinson, Asst. U. S. Atty., argued; M. James Lorenz, U. S. Atty.; John J. Robinson, Asst. U. S. Atty., on the briefs, San Diego, Cal., for plaintiff-appellant.

Howard B. Frank, Frank & Milchen, San Diego, Cal., for defendant-appellee.

Before KASHIWA,* Court of Claims Judge, FLETCHER and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

The government appeals from the district court's order dismissing a San Diego indictment against Gonsalves on the ground that it was barred by the five-year statute of limitations.[1] The charges arose out of a scheme to import hashish from Lebanon which was aborted at the Beirut airport on August 5, 1975, five years and 56 days before the date of the indictment.[2] The

---

* The Honorable Shiro Kashiwa, Associate Judge of the United States Court of Claims, sitting by designation.

1. 18 U.S.C. § 3282 provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offenses, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

2. The indictment charged Gonsalves with violating 21 U.S.C. §§ 841(a)(1), 846, 952, 960, 963 (distributing, importing, and conspiracy to distribute and import controlled substances) and

21 U.S.C. § 843(b) (mail fraud). The essence of the indictment is that Gonsalves masterminded a scheme to import one ton of hashish from Lebanon in fake computer shells. After the plan was aborted in 1975, several men were indicted in San Diego and the next year were tried for their involvement in the Lebanese scheme. Gonsalves was not named in the original indictments; evidence of his involvement became known only after federal officers had interrogated several of the men charged with the crime. A warrant for his arrest—but no indictment—was issued in San Diego on December 3, 1976.

government contends that the indictment was not barred because the statute of limitations was tolled for a period longer than 56 days during which Gonsalves was "fleeing from justice" under 18 U.S.C. § 3290.

## I.

 18 U.S.C. § 3290 provides: "No statute of limitations shall extend to any person fleeing from justice." To take advantage of the tolling effect of § 3290, the prosecution must "prove that the accused concealed himself with the intent to avoid arrest or prosecution." *United States v. Ballesteros-Cordova*, 586 F.2d 1321, 1323 (9th Cir. 1978). "[T]o meet this burden, the prosecution need only prove that the defendant knew that he was wanted by the police and that he failed to submit to arrest." *Id.* The district court found that the government had failed to prove Gonsalves knew about the San Diego charges before the limitations period expired. We do not disturb that finding because our review of the record convinces us it was not clearly erroneous. *See id.* at 1324. We therefore affirm the district court's holding that Gonsalves was not fleeing from the San Diego prosecution.

The government argues further, however, that the statute of limitations was tolled on the San Diego indictment because Gonsalves was fleeing from an unrelated federal indictment in Las Vegas.[3] The district court rejected this argument, holding as a matter of law that fleeing from justice in one federal jurisdiction does not toll the statute of limitations on unrelated charges in a different jurisdiction. Accordingly, the district court made no findings of fact on the issue whether Gonsalves was fleeing from justice on the Las Vegas charges. We

conclude that the district court must make findings on that issue because Gonsalves' alleged flight from prosecution in Las Vegas is relevant to the issue whether the statute of limitations on the San Diego indictment was tolled under § 3290.

 We are unable to reconcile the district court's restrictive reading of § 3290 with the statute's unqualified language that "no" statute of limitations shall extend to "any" person fleeing from justice.[4] Moreover, we believe the congressional policies underlying the criminal limitations statute and the "fleeing from justice" exception to it are harmonized by interpreting § 3290 to deny the benefits of *all* statutes of limitations to a person fleeing from justice in *any* federal jurisdiction.

 "The purpose of the statute of limitations is to balance the government's need for sufficient time to discover and investigate the crime against the defendant's right to avoid perpetual jeopardy for offenses committed in the distant past." *United States v. Di Santillo*, 615 F.2d 128, 135 (3rd Cir. 1980); *see Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 156 (1970). Congress has determined that when the accused in a criminal prosecution is purposely delaying prosecution by "fleeing from justice," the balance tips in favor of the government's need to investigate the crime, and the accused should be denied the benefits of the statute of limitations. *See* 104 U.Pa.L.Rev. 1111, 1113 (1956). When an accused knowingly secretes himself, even diligent investigators may be thwarted from uncovering facts essential to the prosecution.[5] For the purposes of the "fleeing from justice" issue, hiding out from one set of federal law

---

**3.** In 1975, a Las Vegas grand jury had indicted Gonsalves for narcotics offenses unrelated to the Lebanese scheme. That indictment was subsequently dismissed but, in March 1976, Gonsalves was re-indicted in Las Vegas on similar charges.

**4.** Such unambiguous language in a criminal statute "should be accorded its plain meaning." *United States v. Dangdee*, 616 F.2d 1118, 1119 (9th Cir. 1980).

**5.** Gonsalves asserts that the government should not be permitted to take advantage of the "fleeing from justice" exception to the statute of limitations when the prosecution has failed to show due diligence in filing an indictment. The government is not required to file an indictment or even to issue an arrest warrant when the accused is fleeing from justice. *See United States v. Ballesteros-Cordova*, 586 F.2d at 1323.

enforcement authorities is equivalent to hiding out from all of them; the investigation is hampered either way. Thus the period during which a person is subject to jeopardy under federal criminal laws is lengthened by the period during which he impedes any federal criminal investigation by concealing himself with the intent to avoid arrest or prosecution. *See United States v. Wazney*, 529 F.2d 1287, 1289 n.1 (9th Cir. 1976).

■ In sum, we believe § 3290 reflects a congressional intent to deny a person fleeing from justice in any federal jurisdiction the protection of the criminal limitations statute on all federal offenses.[6] *Accord, King v. United States*, 144 F.2d 729, 731 (8th Cir. 1944) (whether defendant was trying to escape from justice in federal court in Texas, or in federal court in Arkansas, or both is immaterial), *cert. denied*, 324 U.S. 854, 65 S.Ct. 711, 89 L.Ed. 1413 (1945); *Brouse v. United States*, 68 F.2d 294, 296 (1st Cir. 1933) ("The fleeing which tolls the statute is flight from the justice of the United States, not the justice of any particular jurisdiction."). We therefore hold that the district court erred in concluding as a matter of law that Gonsalves' alleged flight

from justice on the Las Vegas charges was irrelevant to the tolling of the limitations statute on the San Diego charges.

## II.

Gonsalves contends that even if fleeing from the Las Vegas charges tolls the limitations statute on the San Diego charges, the government failed to adduce evidence sufficient to support a finding that he concealed himself with the requisite intent to avoid arrest on the Las Vegas charges.[7] *See Ballesteros*, 586 F.2d at 1323; *Wazney*, 529 F.2d at 1289. He thus asks this court to hold as a matter of law that he was not fleeing from justice on the Las Vegas charges, thereby rendering unnecessary a remand to the district court for findings of fact on the issue.

## A.

In support of this contention, Gonsalves first argues that because the statute of limitations is an affirmative defense, the government must prove every element under § 3290 beyond a reasonable doubt. The government responds that preponderance of

6. The government contends that *Wazney* is authority for the broad proposition that a person is fleeing from justice within the meaning of § 3290 if he conceals himself with the intent to avoid arrest or prosecution on unrelated state, as well as federal charges. In that case, the defendant was wanted for two crimes, forgery and an unrelated state charge. The federal warrant on the forgery charges was issued in September 1973. A state warrant had apparently already been issued in February 1971, when state officials requested the FBI to seek an arrest warrant for Wazney's interstate flight to avoid prosecution on the state charges.

Wazney surrendered to state authorities following a series of negotiations his attorney conducted with the state authorities on Wazney's behalf. The district court determined that Wazney was fleeing from justice on the forgery charges within the meaning of § 3290, and we affirmed. There is room, we concede, for doubt whether we held in *Wazney* that the federal limitations statute is tolled if a person flees from justice on state charges. Our opinion is arguably unclear whether Wazney was aware, prior to the time he surrendered to state authorities, that he was wanted on federal as well as state charges. In any case, we need not decide the broad proposition advanced by the

government because the question whether concealing one's self with the intent to avoid *state* arrest or prosecution on unrelated charges constitutes fleeing from justice under § 3290 is not presented by the facts of Gonsalves' case. *Cf. Streep v. United States*, 160 U.S. 128, 135, 16 S.Ct. 244, 247, 40 L.Ed. 365 (1895) (fleeing from justice on a state offense tolls the statute of limitations on the *same* offense under federal law.)

7. Although there was evidence that Gonsalves knew about the Las Vegas indictment in the spring of 1980, the trial judge made no finding that Gonsalves was intentionally fleeing from the Las Vegas charges for more than 56 days. The judge at one stage made a finding that Gonsalves was told about the Las Vegas indictment "sometime before June." Reporter's Transcript, vol. VII, at 17. After further argument, he amended his finding, stating "[t]he best I can give you is June." *Id.* at 20. Pressed by the government attorney to set the date at sometime in March 1980, the judge finally stated: "Well, I'll just have to leave it like that. *I can't make a finding.* No one ever pinned it down." *Id.* (emphasis added).

the evidence is the applicable standard of proof because the statute of limitations issue does not bear on the question of guilt or innocence. The question appears to be one of first impression.

■ The starting point of our inquiry is the fundamental principle that the reasonable doubt standard applies to the prosecution's proof for all "essential elements of the crime." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This requirement "operates to give 'concrete substance' to the presumption of innocence, to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding." *Id.* at 315 (quoting *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970)). Similarly, after a criminal defendant shifts the burden to the prosecution by raising an affirmative defense relevant to the issue of guilt, the government must disprove every element of the affirmative defense beyond a reasonable doubt. *See, e.g., United States v. Hearst*, 563 F.2d 1331, 1336 & n.2 (9th Cir. 1977) (duress), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *United States v. Hermosillo-Nanez*, 545 F.2d 1230, 1232 (9th Cir. 1976) (entrapment), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977).

A major reason for adhering to the "reasonable doubt" standard is absent, however, when the evidence offered to prove a defense is unrelated to the issue of guilt. Faced with an argument that the prosecution must prove beyond a reasonable doubt that a defendant's confession was voluntary, the Supreme Court in *Lego v. Twomey*, 404 U.S. 477, 486–89, 92 S.Ct. 619, 625–26, 30 L.Ed.2d 618 (1972), held that the prosecution need only prove voluntariness by a preponderance of the evidence. Although acknowledging that "[a] high standard of proof is necessary . . . to ensure against unjust convictions by giving substance to the presumption of innocence," the Court in *Lego* reasoned that "[a] guilty verdict is not rendered less reliable . . . simply because the admissibility of a confession is determined by a less stringent standard." *Id.* at 486–87, 92 S.Ct. at 625.

■ Similarly, an eventual guilty verdict is not rendered less reliable simply because the issue of fleeing from justice is determined by a less stringent standard. A defendant would still be protected from an unreliable jury verdict by the presumption of his innocence and the adversary system. The prosecution, in trying to prove the defendant's guilt beyond a reasonable doubt, would doubtless face defense arguments that the incriminating evidence had lost its probative value because of the passage of time. Additionally, the trial court has the discretion to exclude stale evidence. *See, e.g., International Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 460 (1st Cir.) (statute of limitations does not govern admissibility of evidence, but trial court may place reasonable limits upon evidence or set reasonable cut-off date before which evidence is considered too remote to have probative value), *cert. denied*, 375 U.S. 820, 84 S.Ct. 56, 11 L.Ed.2d 54 (1963). Because we find these safeguards adequate to protect the reliability of a jury verdict, we hold that preponderance of the evidence is the standard of proof applicable to the issue of fleeing from justice under § 3290.

■ We further hold that the government adduced sufficient evidence at the four-day hearing to support a finding, had the district court made one under the preponderance of the evidence standard, that Gonsalves was fleeing from justice on the Las Vegas charges for a period long enough to toll the limitations statute on the San Diego charges for more than 56 days. A remand is thus necessary to allow the district court to evaluate the evidence and to make appropriate findings on that issue.

**B.**

■ Gonsalves next argues that even if the evidence shows that he had been fleeing from justice on the Las Vegas charges, his flight ended on the day he asked his lawyer to surrender him to Las Vegas authorities. Gonsalves relies on what he claims to be undisputed evidence that he attempted to

surrender through his lawyer after learning about the Las Vegas indictment. He argues that his delay in actually surrendering was dictated by his lawyer's intervening vacation and trial obligations, and not by Gonsalves' attempt to avoid prosecution. In support of that contention, Gonsalves points to his lawyer's testimony that Gonsalves claimed he wanted to turn himself in to "clean up his life," get married, and be with his family. We find that this contention implicitly raises the question whether the statute of limitations is tolled under § 3290 during the time a person with knowledge he is wanted on criminal charges is making a good faith effort to surrender.

The government asserts that because it presented sufficient evidence to demonstrate that Gonsalves knew he was wanted in Las Vegas, *Wazney* controls the outcome in this case.[8] Gonsalves responds by relying on the portion of the *Wazney* opinion where this court emphasized that, "by engaging in negotiations with state officials through his attorney, [Wazney] clearly made known his intent to remain hidden from the authorities until a satisfactory settlement of the state charges against him could be reached." 529 F.2d at 1289. In contrast, Gonsalves argues, he was not negotiating through his lawyer for a "satisfactory settlement" of the Las Vegas charges against him; he was merely trying to surrender.

We agree with Gonsalves that we did not decide that question in *Wazney*. We now hold that the limitations period is not tolled during the time an accused is making a good faith effort to surrender. A finding that the accused made a good faith effort to surrender strikes us as inconsistent with a finding that he had the requisite specific intent to flee from justice. Mindful that "criminal limitations statutes are 'to be lib-

erally interpreted in favor of repose,'" *United States v. Habig*, 390 U.S. 222, 227, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055 (1968) (quoting *United States v. Scharton*, 285 U.S. 518, 522, 52 S.Ct. 416, 417, 76 L.Ed. 917 (1932)), we conclude that an accused's good faith effort to surrender tips the balance on the issue of tolling the statute under § 3290 in favor of the accused's right to avoid perpetual jeopardy. *See United States v. Di Santillo*, 615 F.2d at 135.

■ On the present record, however, we cannot determine, as a matter of law, whether or when Gonsalves made a good faith effort to surrender to the Las Vegas authorities. Those are issues of fact that must be determined in the first instance by the trial judge.[9]

REVERSED and REMANDED.

---

8. For a discussion of the facts and holding of *Wazney* see note 6, *supra.*

9. At the end of four days of hearings, after the district court had dismissed the indictment, the government cited a case stating that a jury should decide the "fleeing from justice" issue. *See Donnell v. United States*, 229 F.2d 560, 563 (5th Cir. 1956). The district court refused to consider the jury issue ruling, in effect, that the

government had waived its right to raise the issue. We agree that by waiting until after four days of hearings and the dismissal of the indictment, the government waived the right to raise this issue. *Cf. Frazier v. United States*, 335 U.S. 497, 513–14, 69 S.Ct. 201, 209–10, 93 L.Ed. 187 (1948) (a defendant waives his right to object to bias of individual jurors when he fails to object before trial).