21 F.3d 1116
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stanley D. BEUS, Defendant-Appellant.
 No. 93-30256.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 4, 1994.
Decided April 22, 1994.
 
 Before: WRIGHT, TANG, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. INTRODUCTION
 
 2
 Appellant Stanley D. Beus ("Beus") appeals his criminal conviction under 26 U.S.C. Sec. 7206(2) for eight counts of aiding or advising in the preparation of fraudulent or false tax documents. We affirm the judgment of the district court.
 
 II. BACKGROUND
 
 3
 In 1981, appellant Stanley D. Beus ("Beus") formed Shilo Automatic Sprinkler, Inc. ("Shilo"), a closely held corporation located in Nampa, Idaho. Shilo was in the business of installing fire sprinkler systems in commercial buildings across the western United States.
 
 
 4
 Between 1985 and 1987, Shilo filed quarterly income tax returns with the Internal Revenue Service ("IRS"). The returns were filed on Form 941, which requires employers to report all wages paid to its employees and all taxes that are withheld from those wages. The returns failed to show any overtime that was paid to Shilo's employees.
 
 
 5
 In reality, Shilo's employees were paid for their overtime "under the table" at straight rates. The overtime amounts were recorded in Shilo's books not as "wages," but as reimbursements for "expenses," which are not subject to any tax withholding. In essence, Shilo's employees obtained their overtime amounts tax-free, and Shilo did not have to pay to the IRS the amounts that should have been withheld.
 
 
 6
 On September 18, 1987, the IRS notified Beus that Shilo was the subject of a routine audit. On October 12, 1987, Shilo began properly accounting for the overtime amounts on its Form 941 returns.
 
 III. PROCEEDINGS BELOW
 
 7
 In 1992, Beus was indicted on nine counts of aiding or advising in the filing of a false Form 941--an employer's quarterly tax return--in violation of 26 U.S.C. Sec. 7206(2). Each count represented a false Form 941 that had been filed by Shilo between the last quarter of 1985 and the last quarter of 1987.
 
 
 8
 The trial commenced on April 5, 1993. At the conclusion of the evidence, the district court dismissed count nine.[1] The jury found Beus guilty of the remaining eight counts. On June 28, 1993, Beus was sentenced to four months imprisonment, a $10,000.00 fine, one year of supervised release, and $11,958.92 in costs for prosecution, incarceration, and supervision.
 
 IV. ANALYSIS
 A. Sufficiency of the Evidence
 
 9
 First, Beus argues that the evidence presented at trial was insufficient to sustain the jury's guilty verdict. We disagree.
 
 
 10
 Here, the government presented sufficient evidence such that a reasonable jury could have found Beus guilty beyond a reasonable doubt of violating each element of 26 U.S.C. Sec. 7206(2) ("Section 7206(2)").[2]
 
 
 11
 1. The Form 941s Were False as to a Material Matter. The government's evidence was sufficient to prove beyond a reasonable doubt that the Form 941s were false as to a material matter--i.e., line two of those returns[3] failed to report the overtime that was paid to Shilo's employees.
 
 
 12
 The government introduced testimony by Robert D. Hanson, a revenue agent with the IRS for 32 years. Using the company's time records, Agent Hanson entered the total amount of hours worked by each employee per week into a computer program. The program showed that the amounts reported on line two of Shilo's Form 941s only accounted for each employee's first 40 hours, and did not account for any overtime worked. In virtually every case, the computer-calculated overtime amount matched precisely what Shilo's bookkeeping system had labeled "expenses."
 
 
 13
 2. Beus Willfully Aided or Advised in the Preparation of Form 941. The government's evidence was also sufficient to prove beyond a reasonable doubt that Beus had willfully aided or advised in the preparation of Shilo's Form 941s.
 
 
 14
 The government first introduced evidence by Theresa Holsclaw, Shilo's secretary and bookkeeper between 1984 and 1987. Holsclaw testified that, shortly after starting her job, she told Beus that his "procedure" for accounting overtime was incorrect. She warned him that it might trigger an IRS audit. Beus replied that "he was willing to take that chance" and instructed her to continue with the procedure.
 
 
 15
 At the end of each year, Holsclaw would ask Beus whether she could issue a 1099 statement[4] for Shilo's employees because the overtime did not appear on their W-2 statements. Beus refused. He told her that the IRS might get "suspicious" if Shilo's regular employees all had 1099 statements. Beus also told her that if such statements were issued, the sum of his employees' income would not match the amounts stated on Shilo's Form 941 returns. One year, Holsclaw actually prepared the 1099 statements for Shilo's employees, but Beus told her to throw them away.
 
 
 16
 The government next introduced evidence by Amy Reed, who replaced Holsclaw as bookkeeper in 1987. Holsclaw told Reed how Beus wanted overtime to be recorded. Like Holsclaw, Reed approached Beus and asked him several times whether the overtime should be reported on Shilos' Form 941 returns. Beus assured Reed that overtime should continue to be recorded as "expenses."
 
 
 17
 The government finally introduced evidence by Michael Johnson, a Shilo employee between 1984 and 1987. At the end of each year, Johnson would ask Beus to include his overtime on his W-2 statement or to issue him a 1099 statement. Beus refused and told Johnson that "if he showed [the overtime] on the W-2, he would be caught."
 
 
 18
 B. Modification of Jury Instructions by Limiting Type of Expenses
 
 
 19
 Second, Beus argues that the trial court erred in modifying his proposed jury instruction so as to limit it to travel and travel-related expenses. We disagree.
 
 
 20
 1. Background. On the morning that the jury was supposed to be instructed, Beus submitted a proposed instruction that asked the jury to determine, as a threshold issue, whether the disputed overtime amounts were in fact "expense allowances."[5] Beus claimed that his instruction was based upon Treas.Reg. Secs. 31.3401(a)-1(b)(2), which stated that an employer was not required to withhold taxes on certain "traveling and other expenses."[6]
 
 
 21
 The court agreed to offer the instruction despite the fact that it was untimely. However, among other things, the court narrowed the phrase "expense allowances" to "travel and travel-related business expenses."[7] The court stated that "[n]o reference was made to other types of business expenses because the court simply could not justify instructing the jury that they could find that the disputed sums were advancements or reimbursements for expenses other than travel related expenses. No evidence had been offered which would support such a claim."[8]
 
 
 22
 2. Discussion. We conclude that the district court did not abuse its discretion in narrowing the phrase "expense allowances" to "travel and travel-related business expenses." Our review of the trial transcript confirms the district court's finding that there was simply no evidence that Beus reimbursed his employees for non-travel expenses.
 
 
 23
 Beus first argues that his employees were required to incur non-travel expenses for gloves and other equipment. However, Beus' argument fails because the testimony clearly shows that he never reimbursed his employees for such expenses. The cost of such gloves and equipment was deducted from each employee's "expense" records. (That is, Beus bought the equipment for his employees and then charged them for it.) If Beus had reimbursed his employees for such amounts, the cost of the equipment would have been added to each employee's "expense" records.
 
 
 24
 Beus next argues that some Shilo employees used their personal vehicles for company business. However, an employee who was questioned about the use of his personal vehicle for company business expressly denied that Beus ever reimbursed him for such use. This testimony was uncontradicted.
 
 
 25
 In fact, there is little evidence that Beus reimbursed his employees for anything. All subsistence expenses (e.g., food and lodging) incurred by Shilo employees while traveling away from home were made directly on a Shilo company credit card. Not only did Beus refuse to pay them time-and-a-half for their overtime, but he refused to pay them for their travel time and their expenses on their way to remote job sites.[9]
 
 C. Shifting Burden of Proof
 
 26
 Third, Beus argues that the district court improperly shifted the burden of proof away from the government and therefore violated the Due Process Clause. We agree in part, but find the error harmless.
 
 
 27
 1. Background. Beus originally asked the court to instruct the jury that the government had the burden of proving beyond a reasonable doubt that the disputed sums were not expense allowances. See supra p. 6 n. 5. The court refused to do so. The court simply instructed the jury that it was required to determine whether the disputed sums were "bona fide reimbursement for travel-related business expenses incurred by [employees]." See supra p. 7 n. 8. The court separated this question from the others before the jury and appeared to treat it as a threshold issue. As a result, the court failed to advise the jury that this question, like all others, was subject to the government's obligation to establish its case beyond a reasonable doubt. Id.
 
 
 28
 2. Discussion. We conclude that the court's failure to explain to the jury the nature of the government's obligation with respect to the expense reimbursement question violated the Due Process Clause. Nevertheless, we find the court's error to be harmless.
 
 
 29
 (a) Constitutional Error. Under Ninth Circuit law, after a criminal defendant raises an affirmative defense, "the government must disprove every element of the affirmative defense beyond a reasonable doubt." United States v. Gonsalves, 675 F.2d 1050, 1054 (9th Cir.), cert. denied, 459 U.S. 837 (1982).
 
 
 30
 Here, Beus raised the affirmative defense that the disputed sums were "expense allowances," which he did not have to report under Treas.Reg. Sec. 31.3401(a)-1(b)(2). Under Gonsalves, such a defense required the government to prove beyond a reasonable doubt that the sums were not expense allowances.
 
 
 31
 In rejecting this part of Beus' proposed jury instruction and giving the instruction in the context in which it was given, the district court failed to explain the government's obligation to disprove the affirmative defense beyond a reasonable doubt--i.e., the jury might have thought that a lesser standard was applicable to the question whether the disputed sums were not "expense allowances."
 
 
 32
 (b) Harmless Error Analysis. However, the district court's constitutional error is subject to harmless-error analysis. See Rose v. Clark, 478 U.S. 570, 580 (1986) (holding that a jury instruction that "impermissibly shifted the burden of proof" can nevertheless constitute harmless error under Chapman v. California ).
 
 
 33
 The Supreme Court has held that the proper inquiry is whether, "on the whole record ... the error ... [is] harmless beyond a reasonable doubt." Id. at 583 (internal quotes omitted). Put differently, the reviewing court must determine whether "the force of the evidence ... is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [constitutional error]." Yates v. Evatt, 111 S.Ct. 1884, 1893 (1991) (emphasis added).
 
 
 34
 Here, our review of the trial record shows that the district court's error is harmless beyond a reasonable doubt. Even had the court properly advised the jury of the government's burden of proof, the force of the evidence on the "expense allowance" issue is so "overwhelming" that the verdict would unquestionably have been the same in this case.
 
 
 35
 There is little if any evidence in the record that Beus ever reimbursed his employees for any expenses--travel or otherwise. The uncontested testimony of Shilo employees showed that Beus (i) deducted the cost of gloves and tools from their pay, (ii) refused to reimburse them for the business use of their personal vehicles, (iii) refused to pay them for their travel time, and (iv) required them to charge all motel and food expenses directly on the Shilo credit card. See supra pp. 7-8. On cross-examination, Beus himself admitted that travel expenses were ordinarily charged on the company credit card, that such expenses were paid for by Shilo, and that his employees never received any per diem or standard allowances.[10]
 
 
 36
 Based on the overwhelming force of the evidence, the jury had no choice but to conclude that, even under the strictest possible standard, the disputed amounts were not "expense allowances." Accordingly, the district court's error on this issue was harmless beyond a reasonable doubt.[11]
 
 V. CONCLUSION
 
 37
 The judgment of the district court is accordingly
 
 
 38
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The court found that the alleged fraud in count nine was due to a mistake on the part of Shilo's bookkeeper and not due to Beus
 
 
 [2]
 Under Section 7206(2), the government must show that (i) the defendant willfully aided or assisted in the preparation of any document arising under the internal revenue laws and that (ii) the document is fraudulent or false as to any material matter
 
 
 [3]
 Line two states: "Total wages and tips subject to withholding, plus other compensation."
 
 
 [4]
 This statement accounts for the difference between the actual wages paid to an employee and the amount indicated on his W-2 statement
 
 
 [5]
 The proposed instruction stated:
 In your consideration of what is or is not overtime, you are instructed that in the years 1985, 1986, and 1987, if an employer, such as Shilo, chose to pay money for subsistence, computed on a basis similar to that used in computing the employee's hourly wage, and identified payments to employees as an expense allowance, it was the employee's responsibility to report the payments on his or her tax return as income from employment, and to substantiate any related business expenses incurred by the employee and claimed as deductions from that income. Prior to 1989 the employer was not required to withhold or pay employment taxes on payments to employees identified as an expense allowance, or to report the amounts so paid as wages subject to withholding on line 2 of Form 941. The amount of the expense item could be computed on a basis similar to that used for computing the employees' wages, for example, the number of hours worked.
 Therefore, the Government must prove beyond a reasonable doubt that the expense money paid to employees was not such an expense allowance.
 
 
 [6]
 The regulation states:
 (2) Traveling and other expenses. Amounts paid specifically--either as advances or reimbursements--for traveling or other bona fide ordinary and necessary expenses incurred or reasonably expected to be incurred in the business of the employer are not wages and are not subject to withholding.
 
 
 [7]
 The court modified the wording because it found that the instruction was confusing and did not conform to the evidence presented at trial
 
 
 [8]
 The modified instruction was as follows:
 Instruction No. 23. The Defendant has presented evidence that the disputed sums at issue in this case were paid to employees as reimbursement for travel and travel-related business expenses incurred or to be incurred by them in the course of their employment with Shilo Automatic Sprinklers, Inc. Therefore, as part of your deliberations you must decide whether the disputed sums were in fact paid as bona fide travel expenses or as overtime wages as the Government alleges.
 If you find that the disputed sums were--excuse me--if you find that the disputed sums were paid to the employees as bona fide reimbursement for travel-related business expenses incurred by them, you must enter a verdict of not guilty on all counts against the Defendant.
 If you find that the disputed sums were in fact paid to the employees as wages for overtime hours worked by them under the pretense of expenses, you must proceed in your deliberations. You must address each count separately, bearing in mind the elements which the Government must prove beyond a reasonable doubt which are set forth in Instruction No. 21.
 
 
 [9]
 During trial, Beus also introduced testimony from an expert who described the various kinds of expenses for which an employee might be reimbursed by his employer. However, the expert never testified that Beus in fact made such reimbursements to his employees
 
 
 [10]
 Even if some payments had been for travel expenses, the result would not be different. All that would change would be that some of the amounts involved in the failure-to-report charges would be slightly less than suggested at trial. The underlying criminal act would remain unchanged
 
 
 [11]
 Beus also argues that the district court's instructions automatically "directed a verdict" for the government. To the contrary, the instruction was merely a threshold determination that allowed Beus a chance for acquittal. The jury was explicitly told that it could not convict Beus unless it also found that the government had met its burden of proof for each element of Section 7206(2). See supra p. 7 n. 8