NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 10-1078
_____

UNITED STATES OF AMERICA

v.

DONOVAN ANTHONY LIVINGSTON,
Appellant
_____

On Appeal from the United States District Court
For the District of Delaware
(D.C. Crim. No. 1-08-cr-00079-001)
District Judge:  Hon. Sue L. Robinson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 14, 2010

BEFORE:  SLOVITER, GREENAWAY, JR., and STAPLETON, *Circuit Judges*

(Opinion Filed: December 15, 2010)

_____

OPINION OF THE COURT
_____

STAPLETON, *Circuit Judge*:

Donovan Anthony Livingston was convicted of re-entering the United States after

having been deported, in violation of 8 U.S.C. § 1326(a) & (b).  Livingston appeals three

of the District Court's pretrial rulings, arguing that it erred in: (1) dismissing his

collateral challenge, pursuant to 8 U.S.C. § 1326(d), to his deportation proceedings; (2) denying his request to dismiss the indictment based on what he contends was *prima facie* evidence of derivative United States citizenship; and (3) denying his request to dismiss the indictment on statute of limitations grounds. Livingston also challenges his sentence, arguing that it did not reflect a rational application of the factors proscribed by 18 U.S.C. § 3553(a). We will affirm.

I.

Livingston was born in Jamaica on April 21, 1961. He is a citizen of Jamaica. His biological father is not listed on his birth certificate, and his mother was not a United States citizen at the time of his birth. His mother did, however, marry a United States citizen in 1969, and she became a naturalized citizen in 1979. Meanwhile, Livingston was admitted to the United States as a lawful permanent resident in 1976, so that he could live with his mother and stepfather.

Several years later, Livingston was convicted of numerous criminal offenses in Delaware. Accordingly, he was issued an order to show cause and notice of hearing charging that he was subject to deportation. An arrest warrant from the Immigration and Naturalization Service ("INS") issued, and he was taken into custody on October 17, 1994.

On January 10, 1995, notice was sent to Livingston's counsel that the deportation hearing was scheduled for June 15, 1995. On June 14, 1995, one day before the hearing, counsel filed a motion to withdraw as counsel, stating that Livingston had not responded to her correspondence regarding continued representation. Counsel did not send a copy

2

of her motion to Livingston. At the June 15 hearing, the Immigration Judge ("IJ") granted counsel's motion to withdraw, and, given that Livingston did not appear and had made no application for relief from deportation, ordered him deported *in absentia*.

On September 27, 1995, Livingston, represented by new counsel, filed a motion to reopen the proceedings and stay his deportation. Just over a month later, however, for reasons that are unclear from the record, Livingston, again through his new counsel, filed a motion for execution of the June 15, 1995 deportation order, thereby withdrawing his motion to reopen and stay deportation. In this motion, Livingston stated that his rights had been fully explained to him, that he understood that he was voluntarily waiving any right to examine the evidence against him and to present his own evidence, that he conceded that he was deportable, and that he waived any rights he may have had to apply for relief from deportation. The IJ granted the motion, and Livingston was deported to Jamaica on November 11, 1995.

Livingston thereafter re-entered the United States, and on January 11, 1999, he was detained by agents of the Drug Enforcement Administration ("DEA"). These agents suspected that Livingston was not a United States citizen, and so they called INS. The INS agent spoke with Livingston by phone, and Livingston told the agent that his name was Darnell Robinson. Livingston was fingerprinted, but in part based on this false identification, he was released. Four days later, INS obtained the fingerprints from DEA, determined that they matched Livingston's, and discovered that he had been deported.

On August 24, 1999, while still at large, Livingston was indicted by a grand jury in the District of Delaware for illegal re-entry after deportation, in violation of 8 U.S.C. §

3

1326(a) & (b). In March 2000, the FBI opened an investigation designed to locate and apprehend him. After approximately three years, and following a conversation between the FBI and one of Livingston's friends, the FBI agent in charge of the investigation received a phone call from a blocked number, and the caller, who spoke with a Jamaican accent, told the agent to stay away from the friend. The agent was convinced that the caller was Livingston, and so the agent urged him to surrender. Between March 2003 and November 2007, the agent spoke with this caller on the phone approximately twelve times. Each time, the agent urged him to surrender, and each time, the caller refused. The agent testified that he has since spoken with Livingston on numerous occasions, has become familiar with his voice, and is certain that the caller was in fact Livingston. Meanwhile, on December 15, 2006, the District Court dismissed the 1999 indictment "in the interests of justice."

In November 2007, law enforcement officers in Nassau County, New York arrested Livingston, and it was discovered that the FBI agent's phone number was saved in Livingston's cell phone. The officers called the agent, and the agent told them to hold Livingston. A few months later, the FBI took custody of Livingston, and on May 15, 2008, a grand jury in the District of Delaware again indicted him on one count of illegal re-entry into the United States.

Livingston pled not guilty but then failed to file any pre-trial motions before the deadline set by the District Court. Nevertheless, shortly before trial, he raised three issues, arguing that: (1) his deportation was based on constitutionally defective proceedings; (2) he was a derivative citizen of the United States and therefore not subject

4

to an illegal re-entry charge; and (3) the indictment was filed after the five-year statute of limitations had run. The District Court ruled that: (1) Livingston was provided with constitutionally adequate due process during his deportation proceedings; (2) he was not a derivative citizen of the United States; and (3) the statute of limitations issue would be submitted to the jury. Following a three-day trial, the jury found Livingston guilty of the illegal re-entry charge. On the statute of limitations issue, the jury returned a special verdict, finding that "the statute of limitations was tolled by [Livingston's] fugitive status, so that this case is not barred by the statute of limitations."

At sentencing, the Probation Office calculated an advisory Guidelines range of 92 to 115 months, resulting from a total offense level of 24 and a criminal history category of V. The District Court denied Livingston's motion for a downward departure but *sua sponte* removed two criminal history points, which lowered the Guidelines range to 77 to 96 months. The Court then sentenced Livingston to 77 months' imprisonment. Livingston now appeals.[1]

## II.

Livingston contends that the District Court erred in denying his collateral challenge to his deportation proceedings. "We review the District Court's determination precluding [a defendant] from collaterally attacking his deportation *de novo*." *United States v. Charleswell*, 456 F.3d 347, 351 (3d Cir. 2006) (citing *United States v. Torres*, 383 F.3d 92, 95 (3d Cir. 2004)). However, "[w]e also review the District Court's factual

---

[1]The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

5

findings for clear error." *Id.* (citing *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002)).

In order to successfully collaterally attack his deportation, an alien must show that "first, he 'exhausted any administrative remedies that may have been available to seek relief against the [deportation] order;' second, 'the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;' and, third, 'the entry of the order was fundamentally unfair.'" *Richardson v. United States*, 558 F.3d 216, 223 (3d Cir. 2009) (citing 8 U.S.C. § 1326(d)). Livingston does not argue that he exhausted his administrative remedies. Instead, he contends that he is excused from the exhaustion requirement because he never received the notice of hearing in his deportation proceedings, because the notice was sent only to his counsel, and she withdrew her representation and never informed him of the hearing date.

Assuming Livingston is excused from the exhaustion requirement, he still cannot prevail, because the proceedings did not improperly deprive him of the opportunity for judicial review. Rather, he deprived himself of that opportunity when he withdrew his motion to reopen his proceedings. While Livingston alleged in his motion to dismiss the indictment (and alleges in his briefing here) that his criminal counsel spoke to his immigration counsel, and immigration counsel stated "that he neither remembered filing a motion to withdraw, nor did the signature on the motion resemble his signature," Appellant's Br. at 28, Livingston provided no affidavit from immigration counsel nor any other evidence to support his suggestion that the motion to execute the deportation order was false or fraudulent.

Accordingly, based on the record, it was not clear error for the District Court to have found that Livingston voluntarily waived his opportunity for judicial review of his deportation order. *See United States v. Cerna*, 603 F.3d 32, 40 (2d Cir. 2010) (stating that whether a defendant waived his right to further review of his removal order is an issue of fact subject to clear error review). Thus, because Livingston failed to meet the second prong of 8 U.S.C. § 1326(d), the District Court did not err in precluding him from collaterally attacking his deportation.

### III.

Livingston argues also that he derived his United States citizenship prior to the date of his deportation order, and so the District Court erred in refusing to dismiss the indictment for this reason. "We exercise plenary review over [a defendant's] derivative citizenship claim, as it presents a pure question of statutory interpretation." *Jordon v. Attorney Gen.*, 424 F.3d 320, 328 (3d Cir. 2005) (citing *Tavarez v. Klingensmith*, 372 F.3d 188, 189 n.2 (3d Cir. 2004)).

Livingston contends that he is entitled to derivative citizenship through his stepfather, a United States citizen by birth, pursuant to the current version of Section 320(a) of the Immigration and Nationality Act. 8 U.S.C. § 1431. Livingston's argument is unavailing, because "[t]he law applicable is that in effect at the time the critical events giving rise to the claim for derivative citizenship occurred," *Morgan v. Attorney Gen.*, 432 F.3d 226, 230 (3d Cir. 2005) (citing *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005)), and "[t]he relevant times are the date of the child's birth, the time of the child's entry into the United States, and the date of the parent's naturalization." *Id.*

7

(citing *Bagot v. Ashcroft*, 398 F.3d 252, 257 n.3 (3d Cir. 2005)). Livingston was born in 1961, he entered the United States in 1976, and his mother was naturalized in 1979. At all of these times, a former version of Section 320(a) was in effect, and it provided that:

> A child born outside of the United States, one of whose parents at the time of the child's birth was an alien and the other of whose parents then was and never thereafter ceased to be a citizen of the United States, shall if such alien parent is naturalized, become a citizen of the United States, when –
>
> (1) such naturalization takes place while such child is under the age of sixteen years; and
>
> (2) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of naturalization or thereafter and begins to reside permanently in the United States while under the age of sixteen years.

8 U.S.C. §1431(a) (1952).

It is clear that Livingston is not entitled to derivative citizenship under this version of Section 320(a), the version that is applicable to him, because he cannot show that at the time of his birth either of his parents was a citizen of the United States. His mother did not become a citizen until 1976, and his father is not listed on his birth certificate. Thus, the District Court did not err in denying Livingston's motion to dismiss the indictment on derivative citizenship grounds.[2]

IV.

---

[2] The Government argues that Livingston's claim of derivative citizenship is properly treated as a motion to collaterally attack his deportation order, and so because Livingston cannot mount a collateral attack due to his waiver of his opportunity for judicial review, his derivative citizenship claim fails. Because we have determined that the derivative citizenship claim itself fails on the merits, however, we need not address the issue of the proper treatment of the claim.

Livingston next contends that the applicable statute of limitations should have barred this criminal action, and therefore the District Court erred in refusing to dismiss the indictment. We exercise plenary review over whether counts of an indictment should have been dismissed for violating the statute of limitations. *United States v. Bornman*, 559 F.3d 150, 152 (3d Cir. 2009).

A five-year statute of limitations applies to most federal crimes, including illegal re-entry. 18 U.S.C. § 3282(a). We have held that illegal re-entry is not a continuing offense, but rather is committed "when [the alien's] presence is first noted by the immigration authorities." *United States v. DiSantillo*, 615 F.2d 128, 137 (3d Cir. 1980). Here, the Government concedes that Livingston was known to be in the United States, and therefore committed the offense of illegal re-entry, at the latest in August 1999, when he was originally indicted. Thus, the May 2008 indictment, the one at issue here, was certainly outside the five-year statute of limitations. However, the Government contends that the statute was tolled between 1999 and November 2007.

Federal law provides that "[n]o statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 3290. To invoke the tolling statute, the Government must show, by a preponderance of the evidence, that "the accused concealed himself with the intent to avoid arrest or prosecution." *United States v. Gonsalves*, 675 F.2d 1050, 1052 (9th Cir. 1982) (internal quotation and citation omitted); *see also United States v. Marshall*, 856 F.2d 896, 900 (7th Cir. 1988) ("[T]he government must show that Marshall left Illinois with the intent to avoid arrest or prosecution by a preponderance of the evidence."). The requisite "intent may be inferred where the defendant fails to

9

surrender to authorities after learning of the charges against him." *Marshall*, 856 F.2d at 900.

The record shows that in January 1999, Livingston identified himself to DEA and INS agents as Darnell Robinson, an alias he conceded he made up when he returned to the United States. In addition, Livingston admitted that while he worked in the United States from 1999 to 2007, he did not file taxes in his real name "[b]ecause of my situation." Finally, the FBI spoke to Livingston by phone on at least twelve occasions between March 2003 and November 2007, and on each of these calls, Livingston was told that he was wanted by law enforcement. Livingston refused to turn himself in. The foregoing is sufficient to support the finding, by a preponderance of the evidence, that between 1999 and 2007, Livingston was concealing himself from the authorities with the intent to avoid prosecution.[3]

Livingston argues that his assertion of derivative citizenship shows that he believed he was a citizen and thus would have had no motive to conceal himself. However, Livingston did not assert his derivative citizenship claim until just before trial, and in fact, he did not raise such a claim when he moved to reopen his deportation proceedings in 1995. Thus, the assertion of derivative citizenship in the District Court does not show that he believed himself to be a citizen during the period from 1999 to

---

[3] Livingston argues that the statute of limitations issue should have been decided by the District Court instead of being submitted to the jury. However, Livingston himself argued to the District Court that the jury should resolve the statute of limitations issue, and so "if there was any error at all, it was invited error and cannot now be a basis for reversal." *United States v. W. Indies Transp., Inc.*, 127 F.3d 299, 311 (3d Cir. 1997) (internal quotations and citations omitted).

2007. In light of the foregoing, the five-year statute of limitations was tolled during the period from August 1999 to November 2007, and thus the May 2008 indictment was timely.[4]

V.

Finally, Livingston challenges the 77-month term of imprisonment imposed by the District Court. We engage in a two-step review of this sentence. First, we ensure that the District Court committed no significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). "Second, if we determine that there has not been a significant procedural error, we review the ultimate sentence imposed to determine if it was substantively reasonable under an abuse of discretion standard." *United States v. Brown*, 595 F.3d 498, 526 (3d Cir. 2010) (citing *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008)).

---

[4] Livingston contends that the Government could have simply proceeded with the original indictment, instead of having it dismissed and then filing the one in May 2008. While this is true, we fail to see how this bears on whether the statute was tolled between 1999 and 2007. In addition, Livingston contends that his counsel was ineffective in failing to raise the statute of limitations issue in a timely pre-trial motion or in a post-trial motion for judgment of acquittal, and had counsel done so, the District Court would have granted either motion instead of submitting the issue to the jury. However, we have determined that the statute of limitations argument fails, and so even if counsel were ineffective for failing to file a formal pre- or post-trial motion, Livingston cannot show that "but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1985).

11

Livingston does not contend that the District Court committed procedural error. Rather, he argues that his sentence was substantively unreasonable "in that it did not reflect a rational application of the § 3553(a) factors," because the Court did not give "appropriate weight" to certain of his mitigation arguments. Appellant's Br. at 30, 32. However, "[t]he decision by the Court . . . not to give such mitigating factors the weight that [the defendant] contends they deserve does not render [his] sentence unreasonable." *United States v. Lessner*, 498 F.3d 185, 204-05 (3d Cir. 2007) (citing *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007)).

The record shows that the District Court considered Livingston's mitigation arguments concerning his residence in the United States, his family, and how much time had passed since he committed the crimes prompting his deportation, and decided that: (1) while he did reside in the United States for a long period of time, he did not take advantage of opportunities to remain in the country legally, instead choosing to engage in "serious criminal conduct;" (2) while he argued that he was a caretaker for his family, "it is really unclear how you've made your living for the past decade;" and (3) while his crimes occurred more than fifteen years before sentencing, he had not "taken responsibility for any of the [criminal] conduct of record." App. at 632-33. This was a rational application of the § 3553(a) factors. "That we might have exercised our sentencing discretion differently, and we do not suggest that we would have done so, is irrelevant." *Lessner*, 498 F.3d at 205 (citing *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006)).

In short, "[a]s long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." *Wise*, 515 F.3d at 218. Nothing in this record convinces us that Livingston's sentence was substantively unreasonable, especially in light of the fact that the District Court removed two of Livingston's criminal history points, thereby lowering the applicable Guidelines range, and then sentenced him at the low end of the adjusted range.

VI.

In light of the foregoing, we will AFFIRM the judgment of the District Court.